**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SIR DEMARCO D. BLEDSOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-80-M** |
| | ) | |
| **STEVEN G. NASH et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# REPORT AND RECOMMENDATION

Plaintiff Sir Demarco D. Bledsoe, a state prisoner appearing pro se and proceeding *in forma pauperis*, filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Doc. No. 1), along with Exhibits (Doc. Nos. 1-1, 1-2, 1-3), and later filed an Amended Complaint (Doc. No. 7).[1] Chief United States District Judge Vicki Miles-LaGrange referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). Having reviewed the relevant pleading and exhibits, the undersigned recommends that this action be dismissed without prejudice and that a pending motion filed by Mr. Bledsoe be denied.

## BACKGROUND

Mr. Bledsoe filed his Amended Complaint on February 24, 2014, while a pretrial detainee at the Logan County Jail in Guthrie, Oklahoma. *See* Am. Compl., Doc. No. 7, at

---

[1] Because Mr. Bledsoe's Complaint was largely illegible, the Court ordered Mr. Bledsoe to file an amended complaint. Order, Doc. No. 6, at 2. Mr. Bledsoe did not refile his Exhibits with his Amended Complaint, but the undersigned has nevertheless considered those documents as part of Mr. Bledsoe's pleading. *See* Fed. R. Civ. P. 8(e), 10(c).

1.[2]  Mr. Bledsoe indicates that this detention stemmed from two pending state criminal cases: *State v. Bledsoe*, No. CF-2012-137 (Logan Cnty. Dist. Ct. filed Apr. 30, 2012) ("No. CF-2012-137"), and *State v. Bledsoe*, No. CF-2013-296 (Logan Cnty. Dist. Ct. filed July 31, 2013) ("No. CF-2013-296").[3]  *See* Am. Compl. at 2, 5-9, 10, 12.  According to the publicly available docket sheets for these cases, No. CF-2012-137 has yet to proceed to trial, but, in No. CF-2013-296, Mr. Bledsoe was convicted by a jury, on October 3, 2014, of assault and battery with a dangerous weapon and sentenced to imprisonment for five years.  Oklahoma Department of Corrections' public records reflect that Mr. Bledsoe was transferred on October 15, 2014, to Davis Correctional Facility ("DCF") in Holdenville, Oklahoma.  On December 22, 2014, Mr. Bledsoe filed a notice of change of address with the Court, reflecting that he is currently incarcerated at DCF.  *See* Pl.'s Notice of Change of Address, Doc. No. 22.

Mr. Bledsoe brings this action against four Defendants: William Lane Fitz, Steven G. Nash, Joan L. Lopez, and Richard Stephens.  Am. Compl. at 1-2, 3.  Defendants Fitz, Nash, and Lopez are defense attorneys who have represented Mr. Bledsoe in his pending criminal matters.  *Id.* at 1-2, 3.  Defendants Fitz and Lopez were appointed by the Logan

---

[2] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.  Further, when quoting from the Amended Complaint and Exhibits, the undersigned has occasionally altered the capitalization to improve readability.

[3] The dockets for Nos. CF-2012-137 and CF-2013-296 are publicly available at http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number=CF-2012-137&db=Logan&submitted=true (last visited Feb. 10, 2015) and http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number=CF-2013-296&db=Logan&submitted=true (last visited Feb. 10, 2015).

County District Court, and Defendant Nash was privately retained by Mr. Bledsoe.  *See id.* at 2, 3-8.  Mr. Bledsoe alleges that Defendants Fitz, Nash, and Lopez have withheld evidence and other legal documents from him that relate to and that would establish his innocence in No. CF-2012-137.[4]  *Id.* at 2, 4-9, 10.  Mr. Bledsoe alleges that despite being "fully aware of" this evidence, these Defendants did not "elect[] to admit[]" the evidence.  *Id.* at 2 (emphasis omitted); *see also id.* at 5-9, 10 (asserting that exonerating evidence has not been brought to the Logan County District Court's attention in No. CF-2012-137).[5]  Mr. Bledsoe contends that Defendants Fitz, Nash, and Lopez instead "elected to intentional[l]y provide [him] with mal-practice" and "intentional[l]y violated [his] right to due-process."  *Id.* at 2.  Mr. Bledsoe asserts that he is, therefore, entitled "[t]o have [No. CF-2012-137] throw[]n-out."  *Id.* at 12; *see also id.* at 9.

Defendant Stephens is the Chief Deputy or Jail Administrator at the Logan County Jail.  *Id.* at 3.  Mr. Bledsoe alleges that at Logan County Jail he was confined to administrative segregation on July 1, 2013, and continued to be confined in that manner through at least mid-February 2014, when he drafted his Amended Complaint.  *See id.* at 2, 9, 11.  Mr. Bledsoe alleges that Defendant Stephens denied Mr. Bledsoe "the right to move off admin[i]strative seg[re]gation."  *See id.* at 2 (emphasis omitted).  Mr. Bledsoe

---

[4] Although Mr. Bledsoe states that he "would [have] been a[c]quitted" in No. CF-2012-137, it is clear from the publicly-available docket that the matter is still pending and that Mr. Bledsoe has not been convicted of the charged felony offenses.

[5] "[E]ven though it's not one of [his] Count[]s," Mr. Bledsoe also discusses events that have transpired at the Logan County District Court involving various judges, prosecutors, and others who are not named as defendants in this action.  *See* Am. Compl. at 5-7 (emphasis omitted).

asserts that in accordance with a Logan County Jail policy, appearing in the inmate handbook, he was "subject to be[ing] re-classif[i]ed" "to a lesser security unit" after six months in administrative segregation. *Id.* at 3. Mr. Bledsoe states that he has "not caused any problem[]s" while confined in administrative segregation. *Id.*

Mr. Bledsoe asserts that he has "informed Mr. Stephens (through request of staffs, and at dis[ci]plinary hearing) that it's not good to hold one on admin[i]strative seg[re]gation (d[ue] to one[']s mental health) for a long period of time." *See id.* at 11 (emphasis omitted). Mr. Bledsoe states that he has similarly informed Defendant Stephens "[n]umerous times . . . that admin[i]strative seg[re]gation is degrading my mental health, to the point I find my-self talking to[] my-self non-stop." *See id.* at 9; *see also id.* at 2, 11. Mr. Bledsoe has filed exhibits that include three Requests to Staff addressed to Defendant Stephens. Ex. 1, Doc. No. 1-1, at 3, 6, 7, 8. Two of the Requests to Staff—dated January 1, 2014, and January 3, 2014, respectively—were answered by a sergeant at the Logan County Jail because Defendant Stephens was on vacation, and another (dated January 6, 2014) was answered by Defendant Stephens via a memorandum dated January 7, 2014, which is discussed below. *See id.* at 1, 3, 6, 7. In each of the Requests to Staff, Mr. Bledsoe references a hearing on an unspecified date at which Defendant Stephens denied Mr. Bledsoe's request to be removed from administrative segregation. *See id.* at 3, 6, 7. Mr. Bledsoe seeks Defendant Stephens' reconsideration of that decision and requests that Mr. Bledsoe's "mental health [be taken] into serious consideration." *Id.* at 3; *see also id.* at 6, 7.

In the January 7, 2014 memorandum, Defendant Stephens acknowledged receipt of a "request to staff [from Mr. Bledsoe] asking for re-classification from maximum security to a lesser security level" based on Mr. Bledsoe's "indicat[ion] that complete segregation is degrading [his] mental health." Ex. 1 at 1. Defendant Stephens stated that the policy by which offenders are classified permits the assignment of certain offenders to maximum security two-person or one-person cells—namely, "offenders who, by their verifiable misconduct, . . . present a serious misconduct problem and who are likely by virtue of any other verifiable background, sentence or charge related factors [to] present a serious assault or escape risk." *Id.* Defendant Stephens then denied Mr. Bledsoe's request: "With your history of charges that brought you into this facility, combined with your aggravated assault and battery of another inmate while at this facility, you most certainly meet the criteria for maximum security, and segregation from other inmates." *Id.* Defendant Stephens added: "If you continue to have doubts about your mental health, please contact the nursing staff and or your attorney to begin the process of requesting mental health evaluation." *Id.*

Mr. Bledsoe attributes his continued confinement in administrative segregation to Defendant Stephens' "person[a]l dislike of" and "bias[] toward" Mr. Bledsoe. *See* Am. Compl. at 11; *see also id.* at 9. Mr. Bledsoe contends that, through the above-described conduct, Defendant Stephens "is violating [Mr. Bledsoe's] right to Due-Process along with [his] Mental Health." Am. Compl. at 11. Mr. Bledsoe further states that Logan

County Jail has "no Mental Health Center to evaluate [his] mental health array[]s at hand" or "in the proper manner."[6]  *Id.* at 11 (emphasis and internal quotation marks omitted), 2.  Mr. Bledsoe thus contends that he is "entitled to have [Defendant Stephens] pay for [Mr. Bledsoe's] mental health . . . evaluation."  *Id.* at 9 (internal quotation marks omitted).

ANALYSIS

A. *Whether Mr. Bledsoe Has Stated a Claim upon Which Relief May Be Granted Under 42 U.S.C. § 1983*

The Court must review each complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking redress against a governmental entity, officer, or employee; or (3) who is proceeding *in forma pauperis*.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a); 42 U.S.C. § 1997e(c)(1).  In such circumstances, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).  In the analysis that follows, the undersigned focuses on whether Mr. Bledsoe has stated a claim upon which relief may be granted.

A plaintiff's complaint must contain "a short and plain statement of the claim showing that [he or she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must include

---

[6] Mr. Bledsoe uses "array" throughout his Amended Complaint and in the Exhibits that he filed with his Complaint.  Based on the contexts in which this word is used, the undersigned understands Mr. Bledsoe to mean "issue."  *See, e.g.*, Am. Compl. at 2, 6, 9, 11; Ex. 1 at 6, 7.

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (emphasizing that all litigants, including pro se litigants, must adhere to procedural rules). A complaint fails to state a claim upon which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe pro se pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Kay*, 500 F.3d at 1218 (10th Cir. 2007) (indicating that court uses same analysis for complaint's sufficiency whether performed sua sponte or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

In determining whether a claim is plausible, context is important, particularly when the claim is brought by a prisoner. *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). Because "[g]overnment conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison," a prisoner may be

required to "allege[] facts that explain why the usual justifications for the complained-of acts do not apply" or "recite[] facts that might well be unnecessary in other contexts." *Id.*; *see also Iqbal*, 556 U.S. at 679-80 (emphasizing context and differentiation of facts from behavior equally or more readily explained as lawful, as well as "judicial experience and common sense," when assessing whether plaintiff has stated a plausible claim).

To state a plausible claim specifically under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to show *both*: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is not sufficient to establish only that a federal right was violated.

1. Claims Against Defendants Fitz, Nash, and Lopez

Regardless of whether a criminal defense attorney is privately retained or court-appointed and paid by the state, he or she "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 & n.7, 321-25 (1981); *see also Vermont v. Brillon*, 556 U.S. 81, 85-88, 91-92 (2009). Even when an attorney's inadequate performance of such traditional functions results in a deprivation of the criminal defendant's federal rights, that attorney has not acted under color of state law for § 1983 liability purposes. *See Harris v. Champion*, 51 F.3d 901, 909-10 (10th Cir. 1995), *superseded by statute on other grounds as recognized in Knox v. Bland,* 632 F.3d 1290, 1292 (10th Cir. 2011); *Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Brillon*, 556 U.S. at 85.

Here, Mr. Bledsoe's allegations against Defendants Fitz, Nash, and Lopez—i.e., that they withheld or failed to present documents, information, and evidence relevant to *State v. Bledsoe*, No. CF-2012-137—relate to traditional functions as counsel to Mr. Bledsoe in the criminal proceedings against him. In accordance with the above authorities, Defendants Fitz, Nash, and Lopez cannot be said to have acted under color of state law in connection with such activities. Therefore, Mr. Bledsoe's claims under § 1983 against these Defendants should be dismissed without prejudice for failure to state a claim upon which relief may be granted.[7] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Claims Against Defendant Stephens

Based on Mr. Bledsoe's status at the relevant time as a pretrial detainee, his factual allegations as to Defendant Stephens, and his contention that Defendant Stephens was "violating [Mr. Bledsoe's] right to Due-Process along with [his] Mental Health," *see* Am. Compl. at 11, the undersigned construes Mr. Bledsoe's Amended Complaint as alleging violations of his federal constitutional rights under the Fourteenth Amendment's Due Process Clause, *see Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979). In light of Mr.

---

[7] To any extent that Mr. Bledsoe was attempting to challenge his pretrial detention, such a claim would instead be properly filed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). The undersigned does not construe Mr. Bledsoe's civil action as separately raising such a challenge and notes that before Mr. Bledsoe filed this action, he separately challenged his pretrial detention through a habeas corpus proceeding. *See* Pet., *Bledsoe v. Oklahoma*, No. CIV-13-1323-D (W.D. Okla. Dec. 16, 2013). Mr. Bledsoe's habeas petition was dismissed without prejudice on February 13, 2014, because Mr. Bledsoe had failed to exhaust his claims in state court. *Bledsoe v. Oklahoma*, No. CIV-13-1323-D, 2014 WL 582937, at *1 (W.D. Okla. Feb. 13, 2014).

Bledsoe's transfer away from the Logan County Jail in October 2014, the undersigned concludes that any claim alleging an *ongoing* violation by Defendant Stephens of Mr. Bledsoe's federal rights is now moot. *See Jordan v. Sosa*, 654 F.3d 1012, 1023, 1027-28 (10th Cir. 2011) (noting mootness of claim deprives court of subject-matter jurisdiction); Fed. R. Civ. P. 12(h)(3) (requiring dismissal "at any time" subject-matter jurisdiction is lacking). The undersigned thus considers only whether Mr. Bledsoe has stated a claim upon which relief may be granted under § 1983 against Defendant Stephens for a past violation of Mr. Bledsoe's rights under the Fourteenth Amendment's Due Process Clause. Further, because Mr. Bledsoe does not specify whether he is suing Defendant Stephens in his individual capacity, official capacity, or both, the undersigned considers both possibilities where appropriate. *See Smith v. United States*, 561 F.3d 1090, 1093 n.2 (10th Cir. 2009); *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991).

a.  Individual Capacity Claims Under § 1983

Although the elements of an individual-capacity claim under § 1983 vary depending upon the federal right allegedly infringed, the plaintiff must allege sufficient facts to establish the defendant's personal involvement in the violation—i.e., that the defendant personally participated in the violation, engaged in conduct that caused the violation, and acted with the requisite state of mind for the type of violation alleged. *See Iqbal*, 556 U.S. at 676; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). These requirements also apply, albeit in a more nuanced manner, when a supervisor is alleged to be responsible for the misconduct of a subordinate employee. *See Iqbal*, 556 U.S. at 676-77; *Schneider v. City*

*of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013); *Dodds*, 614 F.3d at 1194-96, 1198-99.   Under § 1983, no defendant may be vicariously liable for the misconduct of another person.  *See Iqbal*, 556 U.S. at 676; *Schneider*, 717 F.3d at 767.

### b.   Official Capacity Claims Under § 1983

If a defendant is sued under § 1983 in his or her official capacity, the suit is generally treated as one against the governmental entity that the defendant represents. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).   As to Defendant Stephens, the relevant entity is Logan County, which implicates municipal liability.   To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker.  *See Schneider*, 717 F.3d at 769-70.   The plaintiff must then establish that the policy or custom either (1) directly violated a federal right of the plaintiff, or (2) was the "moving force" behind a county employee's violation of a federal right of the plaintiff.  *Id.* at 770.   Finally, a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Id.* at 769, 770-71.   Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) requisite state of mind.  *Id.* at 769.

### c.   Claims Under § 1983 for Deprivation of a Protected Liberty Interest Without Due Process of Law in Violation of the Fourteenth Amendment

A pretrial detainee may not be punished without due process of law but may be subjected "to the restrictions and conditions of [his] detention facility so long as those

conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Wolfish*, 441 U.S. at 535-37; *see also Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005).[8] Restrictions and conditions that are reasonably related to a legitimate governmental objective are not unconstitutional, so long as the restrictions and conditions are not imposed for the purpose of punishment. *Wolfish*, 441 U.S. at 538, 540. Thus, a prison official may confine a pretrial detainee in segregation if such confinement is reasonably related to a legitimate governmental objective, but the prison official may not take such action for a punitive purpose. *See id.* at 539; *Peoples*, 422 F.3d at 1106. Legitimate governmental objectives include not only ensuring the detainee's presence at trial but also ensuring safety and security at the confinement facility. *Wolfish*, 441 U.S. at 540; *Peoples*, 422 F.3d at 1106. Further, prison officials are typically presumed to have expertise in the effective management of their facilities, and courts are generally obligated to defer to this expertise, unless "substantial evidence" suggests that prison officials have "exaggerated their response" to security and management issues. *Wolfish*, 441 U.S. at 540 n.23 (internal quotation marks omitted).

Because a pretrial detainee cannot be subjected to punishment without due process of law, a pretrial detainee's claims regarding conditions of confinement may be analyzed using Eighth Amendment standards as a benchmark. *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998); *see also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009);

---

[8] In *Peoples*, the Tenth Circuit noted that *Sandin v. Connor*, 515 U.S. 472 (1995), which sets forth a due process analysis for convicted prisoners, did not alter the analysis applicable to pretrial detainees, as set forth in *Wolfish*. *Peoples*, 422 F.3d at 1106 n.12.

*Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). That is, a condition constituting cruel and unusual punishment in violation of the Eighth Amendment as to a convicted prisoner is likely to constitute punishment of a pretrial detainee in violation of the Fourteenth Amendment's Due Process Clause because such a condition is unlikely to be reasonably related to a legitimate governmental objective. *See Robinson v. Corriveau*, No. 95-1126, 1995 WL 736276, at *2 (10th Cir. Dec. 7, 1995).[9]

Conditions in a detention facility must be "humane," requiring that each detainee be provided with "the basic necessities of adequate food, clothing, shelter, and medical care" and that reasonable measures be taken to ensure each detainee's safety. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (internal quotation marks omitted). Nevertheless, "jail conditions may be 'restrictive and even harsh' without

---

[9] The *Robinson* Court explained:

> The Supreme Court in *Bell* [*v. Wolfish*] recognized that in some instances what may be cruel and unusual punishment in a long-term facility may not be cruel and unusual punishment under a short-term detention. Thus, what is punishment under the Due Process Clause does not necessarily equate with cruel and unusual punishment under the Eighth Amendment. While it may be true in some instances that what amounts to cruel and unusual punishment under the Eighth Amendment does not amount to punishment in the context of the Due Process Clause—particularly in regard to privileges provided prisoners—in most cases, what is cruel and unusual punishment under the Eighth Amendment also will constitute punishment in the due process context. This is especially true in regard to unsanitary prison conditions. Detention conditions that fail to meet minimal health and safety needs of the prisoners cannot be reasonably related to a legitimate governmental goal.

*Robinson*, 1995 WL 736276, at *2 (footnote omitted).

violating constitutional rights." *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

To establish a constitutional violation based on an inhumane condition of confinement, a plaintiff must first allege facts to show that the condition was objectively "sufficiently serious"—i.e. that the plaintiff was denied "the minimal civilized measure of life's necessities" or that the condition otherwise posed "a substantial risk of serious harm" to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Then, the plaintiff must allege facts to show that the defendant exhibited deliberate indifference—i.e. consciously disregarded—the substantial risk of serious harm asserted by the plaintiff. *Id.* at 835-40, 842, 847 (holding that the Eighth Amendment requires prison officials to take reasonable measures to abate such known risks).

If the plaintiff is alleging that inadequate medical care was provided, a medically focused version of the above standard applies—similarly requiring an objective and a subjective component. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001). The plaintiff must first allege facts to show that the deprivation of rights is related to an objectively serious medical need, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention."[10] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted); *see also Oxendine*, 241 F.3d at 1276-77. Then, the plaintiff must allege facts to show that the defendant consciously disregarded a substantial risk of serious harm to the plaintiff based on the plaintiff's symptoms as presented to the defendant. *Martinez*, 563 F.3d at 1089-90; *Mata*, 427 F.3d 745, 753 (10th Cir. 2005); *Oxendine*, 241 F.3d at 1277.

i.  The Purpose of Mr. Bledsoe's Segregated Confinement

In his January 7, 2014 memorandum, Defendant Stephens states his reasons for placing Mr. Bledsoe in segregation: the "history of charges that brought [Mr. Bledsoe] into [the Logan County Jail], combined with [Mr. Bledsoe's] aggravated assault and battery of another inmate while at this facility." Ex. 1 at 1. In his Amended Complaint, Mr. Bledsoe does not specify the nature of his criminal charges but does cite the previously discussed criminal cases in Logan County District Court: *State v. Bledsoe*, No. CF-2012-137, and *State v. Bledsoe*, No. CF-2013-296. *See* Am. Compl. at 2, 5-9, 10, 12. In No. CF-2012-137, Mr. Bledsoe is charged with robbery with a weapon, kidnapping, and assault and battery with a dangerous weapon—charges which resulted in Mr. Bledsoe's confinement in the Logan County Jail beginning in April 2012.

Mr. Bledsoe states that his segregated confinement began on July 1, 2013. Am. Compl. at 2, 9, 11. This date coincides with a date on which Mr. Bledsoe is alleged to

---

[10] The relevant question is "whether the alleged harm . . . is sufficiently serious"—not "whether the symptoms displayed to the prison employee are sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

have assaulted and battered another inmate at the Logan County Jail, resulting in the filing of No. CF-2013-296, in which Mr. Bledsoe was charged with three counts of felony assault and battery with a dangerous weapon and one count of misdemeanor assault on a police officer.[11]  *See* Information at 1-3, *State v. Bledsoe*, No. CF-2013-296 (Logan Cnty. Dist. Ct. July 31, 2013).

The above information is consistent with Defendant Stephens' proffered reasons for segregating Mr. Bledsoe—namely, that Mr. Bledsoe presented a serious assault risk based on the violent nature of the charges pending against him and his allegedly violent physical altercation involving another inmate.  *See* Ex. 1 at 1.  These reasons express a purpose for the housing decision that is consistent with the legitimate governmental objective of maintaining safety and security in the Logan County Jail and do not reflect an apparent intent to punish Mr. Bledsoe or indicate arbitrary action.  *See Wolfish*, 441 U.S. at 540; *Peoples*, 422 F.3d at 1106-07 ("A detention center . . . has a legitimate interest in segregating individual inmates from the general population for nonpunitive reasons, including threat[s] to the safety and security of the institution." (alteration in original) (internal quotation marks omitted)); *see also Farmer*, 511 U.S. at 833-34, 844-45, 847 (noting duty of prison officials to take reasonable measures to prevent violence among detainees).

_____

[11] In April 2014, the charges against Mr. Bledsoe were amended to one count of assault and battery and one count of misdemeanor assault on a police officer.  Am. Information at 1, *State v. Bledsoe*, No. CF-2013-296 (Logan Cnty. Dist. Ct. Apr. 8, 2014).  As noted above, Mr. Bledsoe was convicted in No. CF-2013-296 on October 3, 2014, of assault and battery with a dangerous weapon and sentenced to imprisonment for five years.

In his Amended Complaint, Mr. Bledsoe does not directly address Defendant Stephens' proffered reasons. Instead, Mr. Bledsoe asserts that he has "not caused any problems" and that Defendant Stephens has a "person[a]l dislike of" and "bias[] toward" Mr. Bledsoe. *See* Am. Compl. at 3, 9, 11. Such conclusory assertions, without more, do not support a reasonable inference that Defendant Stephens segregated Mr. Bledsoe arbitrarily or for the express purpose of punishment or that Defendant Stephens' actions were not reasonably related to a legitimate governmental objective. *See Wolfish*, 441 U.S. at 536-40; *Gee*, 627 F.3d at 1185, 1187-88 (requiring prisoner's claim to provide context, including "sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests"); *Peoples*, 422 F.3d at 1106-07 (affirming dismissal of pretrial detainee's unconstitutional punishment claim based on 13-month segregation, after detainee failed to sufficiently counter legitimate nonpunitive rationales of lack of available bed in general population and substantiated escape risk); *see also Iqbal*, 556 U.S. at 679-80.

Further, although segregation that lasts several months may indicate punishment, the plausibility of any such inference depends upon the circumstances giving rise to the segregation and, as discussed below, the conditions of the segregation itself. Mr. Bledsoe's sparse factual allegations speak to neither. Absent facts suggesting that Defendant Stephens' action—i.e., continuing Mr. Bledsoe's segregated confinement— was an exaggerated response to the perceived threat that Mr. Bledsoe posed to other inmates, the Court is generally obligated to defer to the judgment of prison officials, such as Defendant Stephens, regarding safety and security decisions in a detention facility

17

such as the Logan County Jail. *See Wolfish*, 441 U.S. at 540 n.23. In sum, Mr. Bledsoe has not stated a plausible individual-capacity claim that Defendant Stephens' purpose in segregating Mr. Bledsoe as a pretrial detainee was improperly punitive. *See Iqbal*, 556 U.S. at 677-80; *Gee*, 627 F.3d at 1185, 1187-88; *Peoples*, 422 F.3d 1106-07.

Mr. Bledsoe also contends that, per Logan County Jail policy, he was "subject to be[ing] re-classif[i]ed" "to a lesser security unit" after six months in administrative segregation and that Defendant Stephens denied Mr. Bledsoe's "right to move off admin[i]strative seg[re]gation." Am. Compl. at 2, 3, 9, 11. As explained, Mr. Bledsoe has failed to provide sufficient factual allegations to permit a reasonable inference that the expressed, nonpunitive reasons for segregating Mr. Bledsoe were not legitimate. *See Gee*, 627 F.3d at 1185, 1187-88. "'[N]o process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons.'" *Peoples*, 422 F.3d at 1106 (second alteration in original) (quoting *Higgs v. Carter*, 286 F.3d 437, 438 (7th Cir. 2002)). Regardless of whether Mr. Bledsoe has accurately characterized the policy and regardless of whether any protected liberty interest is implicated in such a policy, Mr. Bledsoe cannot establish that he was constitutionally entitled to any process without showing that his segregation was intended as punishment. *See id.* at 1106-07.

Of note, however, Mr. Bledsoe received some process, as he was heard on the matter through Requests to Staff and a hearing.[12] *See* Am. Compl. at 2, 9, 11; Ex. 1 at 1,

---

[12] In his Amended Complaint, Mr. Bledsoe refers to a "dis[ci]plinary hearing" regarding his segregation, which could suggest that the hearing was related to a punitive action.

3-5.  In his Amended Complaint, Mr. Bledsoe does not challenge the adequacy of this process; he instead challenges the outcome—i.e., the decision made by Defendant Stephens to continue Mr. Bledsoe's segregation.  *See* Am. Compl. at 2, 3, 9, 11.  In Requests to Staff filed as exhibits, however, Mr. Bledsoe alleges that Defendant Stephens "seemed to care nothing about" Mr. Bledsoe's contention at the hearing that "it is not good for one to be held on Admin[i]strative Seg[re]gation for a long period of time, (d[ue] to one's mental health[])."  *See* Ex. 1 at 3; *see also id.* at 6, 7.  Mr. Bledsoe does not otherwise describe the hearing.  *See* Am. Compl. at 2, 3, 9, 11; Ex. 1 at 3, 6, 7.  Even if Mr. Bledsoe were entitled to process in connection with the segregation decision, such sparse factual allegations are insufficient to establish that the hearing and other opportunities to be heard were inadequate.  *See Iqbal*, 556 U.S. at 677-80; *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976) (discussing considerations as to adequacy of process).

Finally, regarding the purpose of his segregation, Mr. Bledsoe does not appear to challenge the Logan County Jail's policy as to that segregation in his Amended Complaint or Exhibits.  *See* Am. Compl. at 2, 3, 9, 11; Ex. 1 at 2-7.  Instead, he alleges

---

*See* Am. Compl. at 2, 9, 11.  However, in his Exhibits, he refers only to a "hearing" regarding his segregation.  *See* Ex. 1 at 3, 6, 7.  Defendant Stephens, in the disposition section of Mr. Bledsoe's January 6, 2014 Request to Staff, refers to a "classification interview," and, in the disposition section of a November 5, 2013 Request to Staff, a Logan County Jail staff member refers to a "reclassification [h]earing."  Ex. 1 at 3, 5.  Without additional factual allegations regarding the hearing, Mr. Bledsoe's mere use of the term "disciplinary" in his Amended Complaint is insufficient to plausibly establish that his segregation was punitive.

that Defendant Stephens did not adhere to that policy in determining whether Mr. Bledsoe's segregation should be continued. *See* Am. Compl. at 2, 3, 9, 11. Accordingly, the undersigned does not construe Mr. Bledsoe's Amended Complaint as alleging an official-capacity claim against Defendant Stephens relevant to the purpose of Mr. Bledsoe's segregation. *See Schneider*, 717 F.3d at 769-71 (requiring plaintiff to show, among other things, that policy directly or indirectly violated federal right); *Houston*, 932 F.2d at 885.

### ii. The Conditions of Mr. Bledsoe's Confinement

As an initial matter, Mr. Bledsoe does not allege that he was denied basic necessities—i.e., adequate food, clothing, shelter, and medical care—while confined at the Logan County Jail. *See* Am. Compl. at 2, 3, 9, 11; *Farmer*, 511 U.S. at 834; *Ledbetter*, 318 F.3d at 1188. Broadly construed, Mr. Bledsoe challenges three conditions of his confinement at the Logan County Jail: (1) his administrative segregation; (2) the general lack or limited availability of on-site mental health services; and (3) the adequacy of Defendant Stephens' response to Mr. Bledsoe's alleged mental health issues.

### Segregated Confinement and On-Site Mental Health Services

Mr. Bledsoe asserts that by the time he drafted his Amended Complaint he had been confined in segregation for over seven months, but he does not otherwise describe any conditions specific to his segregated confinement. *See* Am. Compl. at 2, 3, 9, 11; Ex. 1 at 2-7. Segregated confinement of that duration is not *by itself* an inhumane condition. *See, e.g.*, *Peoples*, 422 F.3d at 1106-07 (affirming dismissal of due process claim where pretrial detainee, who had been segregated for approximately thirteen months, failed to

allege sufficient facts to establish that the segregation was punitive). By contrast, the Tenth Circuit affirmed the entry of judgment for a plaintiff who claimed inhumane pretrial segregation conditions when, as a mentally ill detainee who had been arrested for a nonviolent offense, he was held for most of his 56-day confinement in a solitary "strip cell" with "no windows, no interior lights, no bunk, no floor covering, and no toilet except for a hole in the concrete floor which was flushed irregularly from outside the cell," with the following additional conditions:

> [The] plaintiff was deprived of all his clothes and was given no bedding whatsoever. He slept naked on the concrete floor. Moreover, he was given no opportunity to engage in any recreation outside his cell during this long period and was not permitted to have any reading or writing materials. Thus, to amuse himself this mentally ill prisoner was relegated to banter with inmates in nearby cells. Some of these exchanges escalated into the throwing back and forth of urine and feces. Because plaintiff was denied articles of personal hygiene, he had no means of washing his hands after these unsanitary exchanges, and yet was required to eat most of his food with his fingers. Plaintiff's cell frequently stank of feces and urine.

*Littlefield v. Deland*, 641 F.2d 729, 730 (10th Cir. 1981). The *Littlefield* court noted, however, that the use of strip cells are not unconstitutional per se and, thereby, generally limited its holding to the "extreme" factual circumstances described above. *Id*. at 732. The undersigned does not suggest that such factual circumstances are required to establish a violation of the Fourteenth Amendment's Due Process Clause or that such a level of factual detail is necessary to state a claim upon which relief may be granted. Rather, the distinction in the holdings in *Peoples* and *Littlefield* illustrates the importance of factual allegations of more than merely segregated confinement to plausibly allege that conditions of confinement are inhumane.

Mr. Bledsoe alleges that segregated confinement affected his mental health and conclusorily asserts that "it's not good to hold one on admin[i]strative seg[re]gation (d[ue] to one[']s mental health) for a long period of time." *See* Am. Compl. at 11 (emphasis omitted); *see also id.* at 9 (asserting, "admin[i]strative seg[re]gation is degrading my mental health, to the point I find my-self talking to[] my-self non-stop"). But Mr. Bledsoe provides few facts regarding the actual conditions of his segregated confinement or, for that matter, his mental health. He does not provide any facts about the extent of his isolation, the physical conditions of his confinement, his prior mental health, or whether he requested and was denied mental health treatment. The minimal factual allegations provided by Mr. Bledsoe are insufficient for the undersigned to reasonably infer that the conditions of his segregated confinement would objectively qualify as inhumane and unconstitutional. *See Iqbal*, 556 U.S. at 677-80; *Farmer*, 511 U.S. at 834; *Whitney*, 113 F.3d at 1173-74. Thus, Mr. Bledsoe has failed to state a claim upon which relief may be granted as to this challenged condition. *See Iqbal*, 556 U.S. at 677-80; *Farmer*, 511 U.S. at 834.[13]

Mr. Bledsoe also challenges a condition that is not specific to segregated confinement—that the Logan County Jail lacks a "Mental Health Center to evaluate [his medical issues] in the proper manner." *See* Am. Compl. at 2. Mr. Bledsoe does not,

---

[13] If harm is alleged to have resulted from a delay in medical care, the harm must be "substantial," such as that resulting in a permanent disability or in substantial pain, including such injury or pain that occurs while awaiting treatment. *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014); *see also Mata*, 427 F.3d at 753 (reiterating requirement for "significant, as opposed to trivial, suffering").

however, explain how the alleged lack or limited availability of on-site mental health services objectively posed a substantial risk of serious harm. *See id.* at 2, 3, 9, 11. Mr. Bledsoe does not contend, for instance, that mental health services were wholly unavailable or were unreasonably (or ever) denied or delayed due to the lack of an on-site Mental Health Center. *See id.* Instead, Mr. Bledsoe contends, without elaboration, that his mental health issues could not be evaluated "in the proper manner." *See id.* at 2, 9. Such sparse factual allegations are insufficient to establish that the challenged condition of limited or nonexistent on-site mental health services would objectively qualify as an unconstitutional condition of confinement, and thus, Mr. Bledsoe has failed to state a claim upon which relief may be granted as to this challenged condition. *See Iqbal*, 556 U.S. at 677-80; *Farmer*, 511 U.S. at 834.

The above conclusions hold true regardless of whether Mr. Bledsoe is asserting individual-capacity or official-capacity claims under § 1983 against Defendant Stephens. Either theory of liability requires Mr. Bledsoe to establish a constitutional violation, which, in this instance, requires him to establish the objective component of the conditions-of-confinement claims. *See Farmer*, 511 U.S. at 834; *West*, 487 U.S. at 48; *Schneider*, 717 F.3d at 770. Accordingly, Mr. Bledsoe's claims against Defendant Stephens regarding Mr. Bledsoe's conditions of confinement in segregation and the alleged lack of or limited on-site mental health services at the Logan County Jail should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

<u>Defendant Stephens' Response to Mr. Bledsoe's Alleged Mental Health Issues</u>

Mr. Bledsoe asserts that segregation was "degrading [his] mental health, to the point [that he found himself] talking [to himself] non-stop." *See* Am. Compl. at 9; *see also id.* at 2, 11. Mr. Bledsoe does not state when such mental health issues began and does not otherwise specifically describe any signs or symptoms related to his mental health. *See id.* at 2, 9, 11; Ex. 1 at 2-7. For the purpose of this Report and Recommendation, the undersigned assumes without deciding that Mr. Bledsoe's mental health was sufficiently serious to meet the objective component of a deliberate-indifference claim. The undersigned proceeds to consider whether Mr. Bledsoe has sufficiently alleged that Defendant Stephens exhibited deliberate indifference—i.e. consciously disregarded—a substantial risk of serious harm to Mr. Bledsoe based on Mr. Bledsoe's symptoms as presented to Defendant Stephens. *See Martinez*, 563 F.3d at 1089-90; *Mata*, 427 F.3d at 753; *Oxendine*, 241 F.3d at 1277.

Mr. Bledsoe alleges that he "informed Mr. Stephens (through request of staffs, and at dis[ci]plinary hearing) that it's not good to hold one on admin[i]strative seg[re]gation (d[ue] to one[']s mental health) for a long period of time," *see* Am. Compl. at 11 (emphasis omitted), and that administrative segregation was "degrading [his] mental health, to the point [that he found himself] talking [to himself] non-stop," *see id.* at 9; *see also id.* at 2.[14] Mr. Bledsoe's exhibits include three Requests to Staff addressed to

---

[14] Mr. Bledsoe states that he informed Defendant Stephens of this alleged symptom "[n]umerous times." *See* Am. Compl. at 9. None of Mr. Bledsoe's Exhibits reflect that

Defendant Stephens in early January 2014—all of which refer to unspecified "mental health" issues in connection with administrative segregation and to an earlier hearing on the matter. *See* Ex. 1 at 3, 6, 7.[15] Also in these Requests to Staff, Mr. Bledsoe alleges that Defendant Stephens "seemed to care nothing about" Mr. Bledsoe's contention at the hearing that "it is not good for one to be held on Admin[i]strative Seg[re]gation for a long period of time, (d[ue] to one's mental health[])." *See id.* at 3; *see also id.* at 6, 7.

In his January 7, 2014 memorandum to Mr. Bledsoe, Defendant Stephens acknowledges receipt of one of Mr. Bledsoe's Requests to Staff in which "re-classification from maximum security to a lesser security level" was sought based on Mr. Bledsoe's "indicat[ion] that complete segregation is degrading [his] mental health." *See id.* at 1; *see also id.* at 3 (stating "SEE MEMO – classification interview" and dated January 7, 2014, as to disposition of January 6, 2014 Request to Staff). As discussed above, Defendant Stephens denied Mr. Bledsoe's renewed request to be moved from administrative segregation. *See id.* at 1. Defendant Stephens then added: "If you continue to have doubts about your mental health, please contact the nursing staff and or your attorney to begin the process of requesting mental health evaluation." *Id.*

---

Mr. Bledsoe made Defendant Stephens aware of any specific symptom or that Defendant Stephens had such awareness. Nevertheless, for the purpose of assessing the sufficiency of Mr. Bledsoe's Amended Complaint, the undersigned assumes Mr. Bledsoe's assertion—that he reported the specific symptom to Defendant Stephens—to be true.

[15] As noted, two exhibits are substantive duplicates of a Request to Staff dated January 1, 2014. *Compare* Doc. No. 1-1, at 6, *with* Doc. No. 1-1, at 8.

Mr. Bledsoe does not allege that he requested mental health care from Defendant Stephens or anyone else while confined at the Logan County Jail. Nor does Mr. Bledsoe allege that Defendant Stephens ever directly or indirectly—i.e., individually or as a supervisor—denied or delayed mental health care for Mr. Bledsoe. *See* Am. Compl. at 2, 3, 9, 11; Ex. 1 at 2-7. Instead, Mr. Bledsoe asserts only that Defendant Stephens should have removed Mr. Bledsoe from administrative segregation because Mr. Bledsoe believed that administrative segregation was causing or contributing to his mental health issues. *See* Am. Compl. at 2, 3, 9, 11; Ex. 1 at 2-7.

Mr. Bledsoe's factual allegations alone are insufficient to permit a plausible inference that Defendant Stephens exhibited the requisite deliberate indifference toward a substantial risk of serious harm to Mr. Bledsoe. That is, Defendant Stephens' act of continuing Mr. Bledsoe's assignment to administrative segregation, while recommending that Mr. Bledsoe seek mental health care, is insufficient to establish conscious disregard of a sufficiently serious condition. *See Farmer*, 511 U.S. at 837, 842; *Martinez*, 563 F.3d at 1089-90; *Mata*, 427 F.3d at 753. Thus, Mr. Bledsoe has failed to allege sufficient facts to establish the subjective component of this claim as to Defendant Stephens in his individual capacity, and the claim should be dismissed, accordingly, for failure to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 677-80; *Oxendine*, 241 F.3d at 1276-77; 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

Finally, to the extent that Mr. Bledsoe is challenging the Logan County Jail's administrative segregation policy or any policy related to the availability of onsite mental health services in connection with the above discussion, and to the extent such claims

have not already been addressed, Mr. Bledsoe's factual allegations as to the Logan County Jail's policies are insufficient to state a claim upon which relief may be granted. Among other factual deficiencies, Mr. Bledsoe merely alleges, at most, that such policies exist. These factual allegations are insufficient to establish, for instance, that any such policy was enacted or maintained with deliberate indifference to constitutional rights, as required to state an official-capacity claim upon which relief may be granted. *See Schneider*, 717 F.3d at 769, 770-71. Thus, any such claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

   B. *Whether the Court Should Exercise Supplemental Jurisdiction over Mr. Bledsoe's State-Law Claims*

   At this point, the undersigned has concluded that Mr. Bledsoe has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Mr. Bledsoe asserts no other claims based on federal law but, arguably, has alleged a malpractice or other claim based on state law. Parties on both sides of this lawsuit appear to be citizens of Oklahoma. *See* Am. Compl. at 1-2, 3. Because Mr. Bledsoe's state-law claims do not implicate a diversity of citizenship within the meaning of 28 U.S.C. § 1332, this federal court does not have original jurisdiction over them. Therefore, if the Court adopts the undersigned's recommendation that Mr. Bledsoe's § 1983 claims be dismissed, any supplemental jurisdiction the Court may exercise over his state-law claims would be discretionary. *See* 28 U.S.C. § 1367(c)(3). The undersigned recommends that the Court decline to exercise such jurisdiction.

## RECOMMENDATION

In the foregoing analysis, the undersigned has recommended that all of Mr. Bledsoe's federal claims be dismissed and that the Court decline to exercise supplemental jurisdiction over his state-law claims. Accordingly, the undersigned recommends that Mr. Bledsoe's Amended Complaint (Doc. No. 7) be dismissed. If this recommendation is adopted, the undersigned further recommends that Mr. Bledsoe's pending motion (Doc. No. 20) be denied as moot.

## NOTICE OF RIGHT TO OBJECT

Mr. Bledsoe is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by March 4, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Mr. Bledsoe is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 11th day of February, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE